## Hill *versus* The Cumberland Valley Mutual Protection Co.

1. An owner insured buildings against fire, and afterwards contracted to sell, part of the purchase-money being unpaid, and no conveyance having been made: *Held*, that he had an insurable interest.

2. The conditions of the policy stipulated that if insured property should "be alienated by sale or otherwise;" and if it should "be transferred by any contract or change of partnership or ownership," the policy should be void. *Held*, that a contract of sale, no deed having been made and part of the purchase-money being unpaid, did not avoid the policy.

3. By the contract the vendee had an interest in the property, but not title or ownership.

4. The nature of the vendee's equity, and how it may result, is between the vendor and vendee, or persons in privity with them.

5. Strangers cannot assert a mere equity between the vendor and the vendee, nor set up the equity of the vendee against the legal title of the vendor.

6. The vendor holds the title in trust for the vendee, who is bound to take it unless specially protected by covenants in the articles, notwithstanding the destruction of the property by fire.

7. So far as the vendor is secured the purchase-money by a policy of insurance, the vendee is correspondingly benefited towards the payment of it.

November 16th 1868. Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Error to the Court of Common Pleas of *Washington county*: No. 161, to October and November Term 1868.

This was an action of debt on a policy of insurance, brought by S. E. Hill against The Cumberland Valley Mutual Protection Company.

The defendants were incorporated March 9th 1843. By a sup-

[Hill *v.* Cumberland Valley Mutual Protection Co.]

plement to their charter, approved April 11th 1844, it was provided that they should possess all the powers and privileges, &c., conferred by the charter of the Bradford County Mutual Insurance Company. One of the provisions of that charter is the following :—

"Section 7. When property insured by this corporation shall be alienated by sale or otherwise, the policy shall therefore be void and be surrendered to the directors of said company to be cancelled," &c.

On the 9th of March 1865, the plaintiff insured with the defendants for five years to the amount of $3000, on a flouring-mill, with machinery, &c.

One of the conditions annexed to the policy was, " In case of any transfer of interest in this policy, or any part thereof, either by sale or otherwise ; or if the property herein insured, or any part of it, shall be transferred by any contract or any change of partnership or ownership, whether prior or subsequent to any loss or damage to the property insured, without the written consent of the secretary, this policy shall thenceforth be void and of no effect."

On the 4th of December 1865, the plaintiff, by articles of agreement, contracted to sell his mill, &c., the property insured, to William D. Doak for $4000, as follows : $1500 on the 1st of April 1866, when possession was to be given, and the rest in three equal annual payments. $1000 on account of the first payment were paid January 1st 1866. The company had not consented to the contract of sale. On the 18th of January, Hill being still in possession by his tenant, the mill was burned.

To recover for the loss this suit was brought.

On the trial the court (Sterrett, P. J., of the Fifth District) instructed the jury if they found certain facts, which he stated, they should find for the plaintiff for the amount of his loss, with interest, &c., reserving the question of law, " Whether the agreement of sale to Doak, and receipt of part of the purchase-money, prior to the loss by fire, without the consent of the company, rendered the plaintiff's policy void and of no effect, or not ?"

The jury found for the plaintiff $3289, subject to the opinion of the court on the reserved question.

The court afterwards entered judgment for the defendants on the reserved question *non obstante veredicto*.

The defendant took out a writ of error, and assigned for error entering judgment for the defendants.

*D. S. Wilson,* for plaintiff in error.—The construction of the policy is to be most favorable to the insured : Western Ins. Co. *v.* Cropper, 8 Casey 351 ; Buckley *v.* Garrett, 11 Wright 209.

[Hill *v.* Cumberland Valley Mutual Protection Co.]

*Hopkins & Lazear,* for defendants in error.—It is not necessary the property should be alienated by conveyance : 1 Bouv. Law Dict. *ad verbum Alienate.* Hill's agreement with the company that he was sole owner, and that he would not transfer without the written consent of the company, was a warranty with which he must strictly comply : Ellis on Insurance 28 ; Angell on Insurance, § 193, note, 199–201 ; 1 Phillips on Insurance, § 874 *a.* ; 1 Marsh. on Insurance 347 ; Finley *v.* Lycoming M. Ins. Co., 6 Casey 311 ; Buckley *v.* Garrett, *supra ;* Dix *v.* Mercantile Ins. Co., 22 Ill. 272 ; Dreher *v.* Ætna Ins. Co., 18 Mo. 128 ; McLaren *v.* Hartford Fire Ins. Co., 1 Seld. 157 ; Murdock *v.* Chenango County Mut. Ins. Co., 2 Comst. 210 ; Adams *v.* Rockingham Mut. Ins. Co., 29 Maine 292 ; 1 Amer. L. Cases 612.

The opinion of the court was delivered, January 4th 1869, by THOMPSON, C. J.—The policy on which this suit was brought, was issued by the defendants to the plaintiff, to continue for five years from the 9th day of March 1865. On the 4th of December following, the plaintiff contracted by articles of agreement with one William D. Doak to sell to him the insured property and ground on which it stood, for $4000. One thousand dollars of the purchase-money he received ; the balance was payable in three equal annual instalments from the 1st of April 1866. The possession was to be delivered on the 1st of April 1866, but as no time was fixed in the article of agreement for making title to the purchaser, it was not demandable until payment of the whole purchase-money. On the 18th January subsequent to the contract, the mills were entirely destroyed by fire ; and the principal question below was, whether the plaintiff was entitled to recover on his policy, having during its currency contracted for a sale of the insured property, without the written assent of the secretary of the company, as provided by clause 6th of its regulations ; or whether it was void by the terms of the supplement to the charter, passed 11th April 1844. On the trial, the learned judge reserved the question as to the effect of the contract of sale and receipt of a portion of the purchase-money without the assent of the company endorsed upon the policy, and submitted the case to the jury on the facts, who found for the plaintiff. Afterwards on argument of the reserved question the court set aside the finding of the jury, and entered judgment in favor of the defendants *non obstante veredicto,* and this raises the question to be considered here.

This result was arrived at by the court on technical grounds, that is, on the strength of the stipulation in the policy requiring the assent of the company to the contract of sale, and not upon the untenable ground that the plaintiff by the contract did not hold an insurable interest in the property after the execution of

[Hill v. Cumberland Valley Mutual Protection Co.]

the contract of sale, he retaining the title as his security for the unpaid purchase-money.  That could not be assumed, as a host of authorities to the contrary might be cited to show: Am. Lead. Cases, 4th ed. 626, 19 Pick. 81, 16 Wend. 385, 4 Mass. 330, 12 Ohio 305, and 7 Harris 45, are some of them.  It admits not of a doubt that the plaintiff held an insurable interest in the property when it was burned.  He held the legal title and possession, and three-fourths of the purchase-money remained unpaid.  This is of no practical consequence as a consideration in this case, further than it meets an objection fatal in all cases of a policy separated from an interest in the subject of it.  Such a policy is classed as a gambling policy, and is of no force or obligation.

The error, we think, of the learned judge below was in assuming that the contract of sale was a transfer of the insured property; a change of ownership, which being unassented to by the company, rendered the policy void.  The terms of the contract itself seem to me to be a refutation of this idea.  It was an executory contract, and was dependent on the payment of the purchase-money, for a transfer of the legal title.  True, the vendee had a contract which might entitle him to a conveyance, and he had an equity to the extent of the purchase-money paid, contingent as to both for title, on full performance of his contract.  This was an interest in the property, but was not title or ownership.  According to Bouvier's Law Dictionary, ownership means "title to property; the right by which a thing belongs to some one in particular, to the exclusion of all other persons."  In such contracts as this the vendee, while he has an interest in the property, has not title.  He has an equity, and whether that will ripen into title, will depend upon the future; it is within the range of possibility that it never may.  The nature of the equity and how it may result, is a matter, however, obviously between the vendor and vendee alone, or persons in privity with them.  It is not for strangers to assert mere equities between them.  This is well presented in The Insurance Co. v. Updegraff, 9 Harris 513.  Lewis, J., delivering the opinion of the court, says: " It is sometimes stated in general terms, that by the contract of sale, the purchaser of real estate becomes in equity the owner; but that rule only applies as *between the parties to the contract*, and cannot be extended so as to affect the interest of others.  *  *  *  A stranger cannot set up the equitable title of the vendee against the clear legal title of the vendor.  At law the vendor before payment of the purchase-money and delivery of the conveyance is to all intents and purposes the owner of the estate."  This case goes very far to establish the negative of the position contended for by the defendants in error; viz., that there was a transfer of the property, or a change of ownership by the contract of sale.  The same question was substantially raised in The Perry County

[Hill *v.* Cumberland Valley Mutual Protection Co.]

Insurance Co. *v.* Stewart, 7 Harris 45; and Lowrie, J., delivering the opinion said, "where one has entered into an agreement for the sale of *his insured property*, but has not made a conveyance thereof, nor received the purchase-money, his interest in the property and policy is not thereby parted with, so as to bar his right of action on the happening of a loss." So in Reed *v.* Lukens, 8 Wright 200, it was decided that "money due on a policy of insurance for a loss by fire occurring between the date of such contract and the time fixed for the delivery of the deed, as between the company and the vendor by whom it was insured, belongs to the latter." But the case goes further and shows, as was held in The Insurance Co. *v.* Updegraff, that it will in equity enure to the benefit of the vendee. The vendor holds the title in trust for the vendee, who is bound to take it, unless specially protected by covenants in the articles, notwithstanding the destruction of the property by fire; so far therefore as the vendor is secured his purchase-money by means of the policy, the vendee is correspondingly benefited towards the payment of it. By this process both are benefited on just and equitable principles. The rule which would defeat the vendor's holding the title as security for the purchase-money, in trust for the vendee, would defeat the latter of his property, and perhaps both entirely on technical grounds.

But this is rather a digression. The case last cited, like its predecessors, most assuredly does not regard a contract of sale such as we are considering, as a transfer of ownership. In Trumbull *v.* The Portage County Mutual Insurance Co., 12 Ohio R. 305, we find the same doctrine. Pritchard, J., in delivering the opinion, says "they (the plaintiffs) had entered into a contract to convey at a future day. At law this contract did not *transfer* any right in the land; and in equity the purchaser can only enforce a transfer after he shall have laid a proper basis by paying the purchase-money." See also, to the same effect, The Madison County Mutual Insurance Co. *v.* Masters, 11 Barb. 624, and 2 Am. Lead. Cases 626. These authorities certainly go the length of establishing that the contract in question as between the plaintiff and the company was not an alienation of the property by the plaintiff, nor a transfer of it, nor a change of ownership of it, and did not avoid the policy.

Conditions or clauses in policies, such as we are considering, avoiding them in case of alienation, or transfer or change of ownership without the assent of the insurers, are but declarations of existing principles of law against insurances without an interest, in other words, gambling policies. Out of all such there arises the temptation to omit the good faith which makes the contract of insurance valuable. But where the interest exists in an undoubted insurable form in the insured, the objection is tech-

[Hill *v.* Cumberland Valley Mutual Protection Co.]

nical and not to be favored. In our case the equity of the vendee was but partial, in relation to the property. Nobody could contend that it operated as a transfer of the entire property. It is equally certain it did not transfer any particular portion of it to him; both the title and a preponderating equity remained in the insurer, and we think, both on authority and reason, that the plaintiff was entitled to recover to the full extent of the policy, for that would not exceed the unpaid purchase-money on the property, for which he held both title and possession as security. The case of Finley *et al. v.* The Lycoming Mutual Ins. Co., 6 Casey 311, is far from militating against this doctrine. That was the case of an insurance on personal property effected by partners. Afterwards, one sold out to the other and delivered possession. There was no retention of possession to secure purchase-money, the transfer and change of ownership was complete and perfect before the loss. This sale we held being without the assent of the company, avoided the policy. That was a very different case from this.

But to conclude. We have carefully considered the argument and authorities on behalf of the defendants in error, without being able to realize in them the true rules for this case, in opposition to the authorities we have been referred to on the other side. We must therefore reverse the judgment of the court below on the reserved point, and direct judgment to be entered on the verdict in favor of the plaintiff, with costs.

Judgment reversed, and ordered accordingly.