## George L. Walter *v.* Sun Fire Office, Appellant.

*Fire insurance—Sole ownership—Contract of sale.*

A policy of fire insurance will not be avoided by an executory contract for the sale of the property insured, or by the receipt of a portion of the purchase money, if at the time of the loss the title remains in the person insured.

*Fire insurance—Review—Failure to print testimony and portions of record—Lost record—Practice, S. C. and C. P.*

A judgment on a verdict in favor of plaintiff in a suit against an insurance company will not be reversed where appellant has failed to print the statement of claim, the policy and the evidence necessary to a proper consideration of the case.

Where the stenographer who took the evidence died before writing out his notes, and no one is able to translate the notes, the evidence may be supplied in the same way that lost or destroyed records are supplied.

Argued Oct. 23, 1894.   Appeal, No. 79, Oct. T., 1894, by defendant, from judgment of C. P. No. 2, Allegheny Co., April T., 1893, No. 666, on verdict for plaintiff. Before STER-RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Assumpsit on fire insurance policy.   Before WHITE, J.

The court below charged as follows:

" The plaintiff was the owner of a house and lot in Hampton township, this county, and took out a policy of insurance on the house, the date of the policy being August 1, 1891, the defendant company issuing the policy for one thousand dollars on the payment of the premium, and the policy had three years to run.   On December 21, 1892, some sixteen months after the date of the policy, the house was burned.   There is no contro-versy here as to any payment or neglect of payment by the plaintiff.   He paid his premiums on his policy and kept it alive until after the fire.   Shortly after the fire, on the 4th of January following, which would be about thirteen or fourteen days after the fire, he obtained from the agent of the defend-ant company blank forms for making out his proofs of loss ; he executed those proofs, the blank forms, proving the loss as total and that it amounted to $1,300.   He brought the proofs of loss, properly executed, to the agent of the defendant com-pany.   There is here no objection to the regularity of the exe-cution of the proofs of loss ; no controversy but what the house was a total loss, and no controversy or evidence to the con-trary but that the plaintiff lost to the amount of $1,300 by that fire.

" The defence relied upon is, first, that he was not the sole and unconditional owner of the property ; and, second, that he cannot recover, because he did not ask for appraisers to appraise his loss under the condition in the policy.   Those are the only two questions raised by the affidavit of defence in this case.

" It seems that the plaintiff executed an article of agreement to sell the house and lot to a man named Newman.   That arti-cle of agreement purports to be from the 1st of June, 1891, which would be prior to the date of his policy, August 1, 1891 ; but the plaintiff testifies that that article of agreement was not executed until the 8th day of August, which would be

after he had obtained the policy, and the subscribing witness to that article of agreement testifies to the same fact, that the agreement had not been signed until the 8th of August. In that agreement the plaintiff agreed to sell the house and lot to Newman for $1,075, payable $12 a month with interest, and he was not to execute the deed until 1898, which would be seven years after its date, and I presume that would be after the entire payment of the whole purchase money.

" Now it may be that there was a verbal agreement between the plaintiff and Newman before this policy was taken out; it may be that the article of agreement was drawn up before the policy was taken out, but not signed until afterwards. [Even if there was this verbal agreement, or even if the article of agreement had been written but not signed at the time the plaintiff made his application for the policy and obtained it, he would still be the sole and unconditional owner of the property, because a verbal agreement or an agreement drawn up and not signed is not binding in law, and he could very properly swear that he was the sole and unconditional owner of the property at the time he took out the policy.] [1]

" If you believe, then, gentlemen, that that article of agreement was not signed until after this policy was taken out, then he was the sole and unconditional owner at that time, and that defence would fail. I have no doubt, gentlemen, that the vendor of property as well as the vendee, may take out a policy of insurance upon it. The vendor may take out a policy to protect him on the property, so far as future payments are concerned. The vendee may take out a policy to protect himself. If the property burns down after the articles of agreement are signed he might still be bound to pay the whole of the purchase money, and to protect himself he has a right to take out a policy. So the vendor if it burns down before he gets his money, the vendee may not be able to pay him, and the vendor has a right to take out a policy to protect himself.

" Now there is no evidence that the loss of the plaintiff by that fire was not at least equal to the amount of the policy. He may have received some little from Newman of the purchase money. I do not suppose he could recover more than his loss, but if Newman had paid him one half of the $1,075, or more than that, and the plaintiff's loss was not equal to one

thousand dollars, he could not recover more than what would be his loss; but there is no evidence here to show that he has not sustained a loss to the amount of his policy; the proofs of loss show that the loss was $1,300. There is no evidence to show that he received $300 from Newman.

" Now, on the other question, was he bound to ask for appraisers before he could bring suit? That is the second ground for defence. There is a provision in the policy of insurance that where the parties cannot agree, appraisers must be appointed to ascertain the loss. The plaintiff has testified that when he furnished his proofs of loss he was told by the agent he had nothing more to do. Now if you are satisfied that he was told that, then he was not bound to ask for appraisers."

Defendant's points were among others as follows:

" 2. If the jury believe that the insured be not the sole and unconditional owner of the property, then the plaintiff cannot recover unless the consent in writing of the insurer is shown. *Answer:* Refused, as explained in the charge." [2]

7. Request for binding instruction. Refused. [3]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1–3) above instructions, quoting them.

*Albert York Smith,* for appellant.—Plaintiff had no insurable interest: Ins. Co. v. Dunham, 117 Pa. 460; Elliott v. Ins. Co., 117 Pa. 548; Siter, James & Co.'s Ap., 26 Pa. 178; Reed v. Lukens, 44 Pa. 200; Schroedel v. Ins. Co. 158 Pa. 459; Diffenbaugh v. Ins. Co., 150 Pa. 270; Biddle, Ins. § 204; Mott v. Ins. Co., 23 N. Y. Sup. 400.

In Everett v. Ins. Co., 142 Pa. 322, the condition as to appraisers was sustained as a proper one.

*W. P. Potter, Wm. A. Stone* with him, for appellee.—Entering into the articles of agreement was not such a change in ownership as would avoid the policy: Hill v. Protection Co., 59 Pa. 474; Ins. Co. v. Stewart, 19 Pa. 45; Parcell v. Grosser, 109 Pa. 617; Savage v. Ins. Co., 43 How. 462; Grable v. Ins. Co., 21 Ins. L. J. 132; Ice Co. v. Ins. Co., 12 Allen, 381.

OPINION BY MR. CHIEF JUSTICE STERRETT, Jan. 7, 1895:

From the learned judge's charge and part of the record before us, this action appears to be on a policy of insurance, issued by defendant for $1,000, covering plaintiff's dwelling

house.  During the life of the policy, the house was destroyed by fire, and within a fortnight thereafter plaintiff procured blanks from defendant, on which regular proof of total loss, amounting to $1,300, was made and delivered to defendant's agent, who in substance expressed his satisfaction therewith, and informed plaintiff that he had nothing more to do, etc.

The only grounds of defence were : 1st. That plaintiff " was not the sole and unconditional owner of the property ; " 2d. " That he cannot recover because he did not ask for appraisers to appraise his loss under the conditions of the policy." As correctly stated by the learned judge, " These are the only two questions raised by the affidavit of defence." Under the rules of the court below, any defence, not disclosed by defendant's affidavit, is unavailable on the trial, without amendment, etc.  It further appears that as to both grounds of defence testimony was introduced, which, in the opinion of the trial judge, presented questions of fact exclusively for the jury.  They were accordingly submitted to and determined by them in favor of the plaintiff.  So far as shown, by the incomplete record before us, there was no error in thus submitting the questions on which said defences respectively depended.  We have not been furnished with plaintiff's statement and affidavit of claim, nor with the policy of insurance etc., nor with any of the testimony, except a copy of plaintiff's agreement with Frank Newman, on which defendant appears to have relied to sustain its first ground of defence.  No reason is even suggested for omitting to present copies of plaintiff's statement and affidavit of claim, and policy of insurance with conditions attached thereto.  The only excuse offered for not furnishing the testimony is that the stenographer died and his notes could not be translated into long hand.  Granting this ; if the testimony was made part of the record by exception etc., its loss, by reason of impossible translation of the deceased stenographer's notes or otherwise, might have been sufficiently supplied in same way that lost or destroyed records are supplied when necessary.

It would be unfair to the successful party in the court below, as well as to the court itself, if we should undertake to convict it of error, in matters depending either on the evidence,

or the state of the pleadings in the court below, without having either the testimony or the pleadings before us.

As to the first ground of defence, it may be fairly inferred, from what is said in the charge of the court, that the agreement, relied on by defendant, was shown by the testimony to have been executed some time after the policy of insurance was issued, and hence there was nothing to sustain that ground of defence.   That question, as well as the one relating to the other ground of defence, was submitted to the jury, as already stated, and the necessary implication from their verdict is that both were found in favor of plaintiff.   But it is enough to say that there is nothing in the record, as presented to us in the paper-books, to justify us in convicting the court below of error in either of the particulars specified in the assignments.

Judgment affirmed.